## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

SHARI WILKINS-DULEY,

      Plaintiff(s),

v.

CHERRY CREEK SCHOOL DISTRICT No. 5, a Colorado corporation,

      Defendant(s).

---

## COMPLAINT AND JURY DEMAND

---

The Plaintiff, Shari Wilkins-Duley, by and through her attorney, Nina H. Kazazian of Kazazian & Associates, LLC, states her Complaint against Defendant Cherry Creek School District 5:

## I. INTRODUCTION

Defendant wrongfully retaliated against Plaintiff Shari Wilkins-Duley ("Ms. Wilkins-Duley"), a white woman over the age of 50 years old, after she objected to discriminatory treatment and complained that the new school Principal, Darla Quintana-Thompson ("Ms. Quintana-Thompson"), required her to implement a new push-in co-teaching model that violated federal law regarding the delivery of services to students in the Special Education program.  Defendant's employees subjected Ms. Wilkins-Duley to unfounded discipline that is pre-determined to result in her termination before the end of 2020, and has harmed her reputation as a teacher, reduced her income, and caused

her emotional distress.  Ms. Wilkins-Duley therefore brings this lawsuit to correct the harm she has suffered.

## II. JURISDICTION AND VENUE

1.      This action arises under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621-634, the Civil Rights Act of 1964, ("Title VII"), as amended, 42 U.S.C. § 2000e et seq. and §1981

2.      This court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1337, 1343(4), 29 U.S.C. § 626(b) and (c), and 29 U.S.C. § 1132(e).

3.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant is subject to and headquartered in the District of Colorado, and the employment practices alleged to be unlawful were committed in the District of Colorado.

## III. ADMINISTRATIVE PREREQUISITES

3. Ms. Wilkins-Duley alleges violations of Title VII and ADEA, and timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission. The EEOC issued a Notice of Right to Sue on March 12, 2020. This Complaint was filed within 90 days of the date of the Notice. Thus, all administrative prerequisites have been met.

## IV. PARTIES

4. Ms. Wilkins-Duley is a resident of and domiciled in the State of Colorado. She is a 56-year old white woman.

2020-06-10_final_Complaint_SWD_CCSD.docx

5. Defendant Cherry Creek School District 5 ("CCSD") is a corporation with its district headquarters in Greenwood Village, Colorado.

## V. FACTUAL ALLEGATIONS

5.  CCSD hired Ms. Wilkins-Duley in 2005 to teach students with special needs. From July 2005 to June 2007, Ms. Wilkins-Duley worked at Smoky Hill High School teaching students with significantly identifiable emotional disturbances ("SIED").

6.  From July 2007 to June 2008, Ms. Wilkins-Duley worked at Highline Community Elementary School ("Highline") as a Response to Intervention ("RTI") interventionist.

7.  From July 2008 to June 2014, Ms. Wilkins-Duley worked at Falcon Creek Middle School as a teacher of students with learning disabilities ("LD").  In July 2014, Ms. Wilkins-Duley returned to Highline as an LD teacher and is employed at Highline in Aurora, Colorado.

8.  Darla Quintana-Thompson became the principal at Highline in July 2014.  Ms. Quintana-Thompson was tasked with improving the quality of education at Highline. However, Highline remained on turn-around status due to poor scores on the standardized tests from 2014 to 2016.

9.  From 2014 to 2016, Ms. Wilkins-Duley was evaluated by the Assistant Principal, Diana Price ("Price").

10. From 2005 through 2016, Ms. Wilkins-Duley received positive performance evaluations from each of her different evaluators and regular raises at each of her positions.

11. In 2016, Ms. Quintana-Thompson became Ms. Wilkins-Duley's evaluator. Although Ms. Quintana-Thompson is said to have a Masters' degree in special education, she has never worked as a teacher in special education.  Because Ms.

2020-06-10_final_Complaint_SWD_CCSD.docx

Quintana-Thompson had no experience teaching special education, she was in no position to evaluate Ms. Wilkins-Duley's teaching skills first-hand.

12. Shortly thereafter, Ms. Quintana-Thompson fundamentally changed the way special education services were delivered at Highline when she required the teaching staff to implement a "flood-in" model of co-teaching (literacy interventionist, special education teachers, general education teachers would all be co-teaching in the classroom with the students).

13. The IDEA requires that public schools create an Individualized Education Program (IEP) for each student found to be eligible under both the federal and state eligibility/disability standards. The IEP describes the student's present levels of academic achievement and functional performance, and how the student's disabilities affect or would affect the child's involvement in the general education curriculum. The IEP also specifies the services to be provided and how often, and it specifies accommodations and modifications to be provided for the student.

14. By dictating the service delivery model, Ms. Quintana-Thompson prevented the special education teachers at Highline from meeting the service requirements for each student, as defined in their respective Individualized Education Program ("IEP").   Ms. Quintana-Thompson's model moved students to different classrooms as their abilities increased, and the special education teachers could not work with the students in those other classrooms.  The law requires IEP service minutes to be delivered by Special Education teachers, not general education teachers.

15. Ms. Wilkins-Duley raised these concerns to Ms. Quintana-Thompson in several emails throughout the 2016-2017 school year and explained to Ms. Quintana-Thompson why the model did not comply with the IEP requirements.  Ms. Quintana-Thompson would not permit Ms. Wilkins-Duley to abandon the model.

16. In conversations with Ms. Quintana-Thompson, Ms. Wilkins-Duley realized that Ms. Quintana-Thompson did not know how to read the minutes in an IEP.

4

17. Jessica Keller asked Ms. Quintana-Thompson to not require her to follow the co-teaching model, which Ms. Quintana-Thompson allowed.  Ms. Keller was younger, had less teaching experience, and was less qualified than was Ms. Wilkins-Duley.

18. Ms. Wilkins-Duley also informed HR that the push-in coteaching model implemented by Ms. Quintana-Thompson contradicted the legal requirements to deliver special services to students as defined by the IEP.

19. Ms. Wilkins-Duley sought support from several other employees at the school, including Nanette Almon, Susan Snowdon, Amanda Waleski.  No employees took any remedial action.  All knew the details of the push-in co-teaching model Ms. Quintana-Thompson required Ms. Wilkins-Duley—and only Ms. Wilkins-Duley—to follow.

20. Ms. Quintana-Thompson discovered Ms. Wilkins-Duley's complaint and said that she was very surprised and disappointed.

21. CCSD did not investigate Ms. Wilkins-Duley's complaint.

22.  Ms. Quintana-Thompson would not allow Ms. Wilkins-Duley to attend the Orton Gillingham training during 2016-2017 school year.

23.  All the other Special Education teachers attended this training, and CCSD paid for it directly.

24. Ms. Wilkins-Duley signed up for the training over the summer of 2017 and paid for it herself.

25. When Nanette Almon discovered this during the fall of 2017, she reimbursed Ms. Wilkins-Duley.

26. At the end of the 2016-2017 school year, Ms. Quintana-Thompson evaluated Ms. Wilkins-Duley as "effective."

27. Ms. Quintana-Thompson's criticisms of Ms. Wilkins-Duley's performance referred to subjective unverified information from unidentified sources.

28. Ms. Quintana-Thompson also kept Ms. Wilkins-Duley from attending Data Days, when teachers talk about data and the students' growth in scores.

29. Quintana-Thompson had Ms. Keller attend the sped 'job-alike' training along with Ms. Wilkins-Duley's colleagues in the District. However, Quintana-Thompson excluded Ms. Wilkins-Duley from these trainings also.  Ms. Wilkins-Duley tried to get the information second-hand.  The information shared at these trainings was essential. It includes updates to the profession, information about important trainings to take.

30. Quintana-Thompson also singled out and excluded Ms. Wilkins-Duley from the Mental Imagining training by the district special education coordinators.  Ms. Wilkins-Duley's colleagues received this training, which is also very important to use with the students.

31. Ms. Quintana-Thompson blamed the poor results of her push-in model on Ms. Wilkins-Duley instead of attributing the failures to the structure of the model Ms. Quintana-Thompson devised.

32. Jessica Keller, who did not have to do the push-in model Ms. Quintana-Thompson had devised, received a positive performance review.

33. Beginning in 2017, Ms. Quintana-Thompson's detrimental and unlawful push-in model was finally scrapped.  During the 2017-2019 school years, the school improved significantly and attained improved status.

34. Ms. Wilkins-Duley's skills as an educator and her devotion to her students contributed to Highline's overall improvement.

35. Ms. Quintana-Thompson denied that she demanded the push-in model to be followed.

36. Ms. Quintana-Thompson took no responsibility for Highline's poor performance during her first two years as Principal.

37. In December 2017, Ms. Wilkins-Duley earned National Board Certification in Exceptional Needs.

38. Ms. Keller has not earned National Board Certification in Exceptional Needs.

39. CCSD's District Coordinators have not earned the National Board Certification in Exceptional Needs.

40. Ms. Quintana-Thompson has not earned National Board Certification in Exceptional Needs.

41. On information and belief, Ms. Wilkins-Duley is the second person in the District that has earned National Board Certification in Exceptional Needs.

42. At the end of the 2017-2018 school year, Ms. Quintana-Thompson rated Ms. Wilkins-Duley "effective," with a score of 1.78, which is higher than the year before.

43. At the end of the 2018-2019 school year, Ms. Quintana-Thompson relied on the comments from others who did not work with Ms. Wilkins-Duley, and had only observed her teaching in one setting on a single day, and lowered her rating to partially effective (the range is .71-1.70 and her score was 1.54). Ms. Quintana-Thompson also issued a letter of reprimand.

44. In June 2019, Ms. Wilkins-Duley filed a charge of discrimination with the EEOC.

45. After CCSD learned of the Charge, Ms. Wilkins-Duley was prohibited from attending certain training seminars and participating in two programs that Ms. Wilkins-Duley had done for years.  This adverse action reduced Ms. Wilkins-Duley's annual income by $7,830.00 for the 2019-2020 school year.

46. In August 2019, Ms. Quintana-Thompson was transferred to a new position within the District and out of Ms. Wilkins-Duley's line of supervisors.  A new principal was brought into Highline for the 2019-2020 school year.

47. The stress of being scapegoated by Ms. Quintana-Thompson for two years and the prospect of losing her job required Ms. Wilkins-Duley to take a medical leave under the FMLA during the fall of 2019.  On the day Ms. Wilkins-Duley returned to work, the District required Ms. Wilkins-Duley to attend an in-person meeting with Ms. Quintana-Thompson to deliver the next step in the disciplinary process.  Because Ms. Quintana-

Thompson was no longer Ms. Wilkins-Duley's supervisor, having Ms. Quintana-Thompson direct the meeting deviated from CCSD procedures and practices.

48. Ms. Wilkins-Duley's salary is $9,027.73 per month (Including 5% for Professional Growth and 5% for the National Board, and Max Salary of 99.75 per month).  This is the maximum salary for an educator employed by CCSD.

### FIRST CLAIM FOR RELIEF
### (Retaliation in violation of IDEIA, the ADA, and
### the Rehabilitation Act of 1973, as amended)

49. Plaintiff incorporates by reference all previous paragraphs as though set forth herein.

50. Ms. Wilkins-Duley engaged in activities and speech opposing Ms. Quintana-Thompson's implementation of an education practice prohibited by IDEA and the Rehabilitation Act of 1973, by objecting to and internally reporting that Ms. Quintana-Thompson's push-in model violated students' IEPs and, therefore, state and federal law.

51. Ms. Wilkins-Duley opposed CCSD's pervasive discrimination against the students protected by the IDEA, the ADA, and state and federal law.

52. Because of Ms. Wilkins-Duley's opposition to Ms. Quintana-Thompson's prohibited activities under state and federal law, CCSD subjected her to adverse employment action, including but not limited to, applying discipline intended to result in termination and damage her reputation and career as an educator, denying her requests to transfer, excluded her from standard annual training, and reducing her income, which adverse treatment has continued through today.

53. CCSD, either directly or through its agents, retaliated against Ms. Wilkins-Duley and directly and proximately caused her losses.

54. CCSD's acts and conduct were committed with malice or with reckless indifference to the federally protected rights of Ms. Wilkins-Duley and the students, within the meaning of IDEA, the ADA, and state law.

## SECOND CLAIM FOR RELIEF
### (Age Discrimination)

55. Paragraphs 1 through 34 are realleged and incorporated herein by reference.

56. CCSD is an "employer" as defined by the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 630 and the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-401.

57. Ms. Wilkins-Duley is an "employee" as defined by the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 630 and the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-401.

58. At all times, Ms. Wilkins-Duley was qualified for her position and met the objective performance criteria for her job functions.

59. Age was a decisive factor in CCSD's decision to discipline Ms. Wilkins-Duley and exclude her from the programs for training and tutoring, which decreased Ms. Wilkins-Duley's income.

60. CCSD treated Ms. Wilkins-Duley less favorably than her similarly situated counterparts who were under the age of 40 and less qualified.  CCSD subjected Ms. Wilkins-Duley to adverse treatment in the terms and conditions of her employment.

61. CCSD violated the ADEA, 29 U.S.C. § 623(a)(1), and CADA, C.R.S. § 24-34-402 with knowing or reckless disregard of the Acts' proscriptions.

62. CCSD's stated reasons for its actions are a mere pretext for illegal discrimination.

63. Defendant is liable for the acts and/or omissions of its agents and employees. Defendant, either directly or through its agents, discriminated against Ms. Wilkins-Duley because of her age, and directly and proximately caused her losses.

64. Ms. Wilkins-Duley is entitled to reinstatement of her "effectiveness" rating, access to training and tutoring, front pay, and benefits through normal retirement age.

65. The age-discriminatory actions by CCSD against Ms. Wilkins-Duley caused her damages, for which CCSD is liable in an amount to be determined.

**THIRD CLAIM FOR RELIEF**
**(Liquidated Damages)**

66. Paragraphs 1 through 34 and 42 through 51 are realleged and incorporated herein by reference.

67. CCSD intentionally, knowingly and voluntarily violated the ADEA and age was a predominant factor in its decision to discipline Ms. Wilkins-Duley and restrict her access to training and school-based opportunities to earn additional income.

68. Defendant's acts and conduct were committed with malice or with reckless indifference to Ms. Wilkins-Duley's federally protected rights within the meaning of Title VII

69. CCSD is liable to Ms. Wilkins-Duley for liquidated damages under 29 U.S.C. § 626(b), equal to twice the compensatory damages awarded.

**FOURTH CLAIM FOR RELIEF**
**(Retaliation in violation of Title VII and CADA)**

70. Paragraphs 1 through 34 and 42 through 55 are realleged and incorporated herein by reference.

71. Ms. Wilkins-Duley engaged in activities and speech opposing employment practices prohibited by Title VII, by objecting to and internally reporting discriminatory treatment. Because of Ms. Wilkins-Duley's opposition to activities prohibited by Title VII, CCSD subjected her to adverse treatment, including but not limited to, discipline

intended to result in termination, denied her requests to transfer, restricted her access to training, and reduced her income.

72. CCSD, either directly or through its agents, retaliated against Ms. Wilkins-Duley and directly and proximately caused her losses.

73. CCSD's acts and conduct were committed with malice or with reckless indifference to the federally protected rights of Ms. Wilkins-Duley within the meaning of Title VII.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons stated above, Plaintiff respectfully requests this Honorable Court enter a judgment for the Plaintiff:

1. Non-economic damages for emotional distress, mental pain and suffering, inconvenience, emotional stress, fear, anxiety, embarrassment, humiliation, back pay, and front pay;

2. An award of actual damages in amount to be determined including lost wages, benefits, and income through the extra-curricular programs sponsored by CCSD (back pay and front pay) through normal retirement age;

3. An award of liquidated damages;

4. An award of reasonable attorneys' fees and costs;

5. An award of Plaintiff's pre- and post-judgment interest;

6. Injunctive relief ordering Defendant to stop interfering with Plaintiff's transfer requests and to stop the disciplinary process underway since 2017;

7. Equitable relief, in the form of expungement of all discipline started by and Ms. Quintana-Thompson and following (from 2017 to the present) from Plaintiff's personnel records; and

8. An award of such other and further relief in favor of Plaintiff and against Defendant as this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated:  Wednesday, June 10, 2020

Respectfully submitted,

KAZAZIAN & ASSOCIATES LLC

s/ *Nina H. Kazazian*
Nina H. Kazazian
825 E. Speer Blvd., Suite 100H
Denver, CO 80218
Telephone: (303) 888-1100
E-mail: nina@kazazian.com
*Attorney for Plaintiff Shari Wilkins-Duley*

## VERIFICATION

I am the Plaintiff in this case.  I declare under penalty of perjury that I have reviewed the Complaint; I know or believe that all allegations of which I have personal knowledge are true; and I believe the allegations of which I do not have personal knowledge are true based on specified information, documents, or both.


Dated and done on Wednesday, June 10, 2020,


*Shari Wilkins-Duley*

ID 1BwGNWjz94uNTDtm6VKPp6r3

Shari Wilkins-Duley, Plaintiff

2020-06-10_final_Complaint_SWD_CCSD.docx

# E-Signature Details

| | |
|---|---|
| **Signer ID:** | **1BwGNWjz94uNTDtm6VKPp6r3** |
| Signed by: | Shari Wilkins-Duley |
| Sent to email: | swilkinsduley@gmail.com |
| IP Address: | 24.8.154.62 |
| Signed at: | Jun 10 2020, 12:26 pm PDT |